## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HARLAND FEREBEE

*Petitioner*

v.

UNITED STATES OF AMERICA,

*Respondent*.

Criminal No. ELH-21-0472
Related Civil No.:  ELH-23-2733

## MEMORANDUM OPINION

This opinion addresses the post-conviction petition filed under 28 U.S.C. § 2255 by defendant Harland Ferebee.  *See* ECF 54, ECF 59.

The Court received correspondence from the defendant, docketed on October 10, 2023 (ECF 54), which was construed as a motion under 28 U.S.C. § 2255.  And, by Order of October 18, 2023 (ECF 58), I granted defendant 28 days to supplement the submission, using a preprinted form that was provided to him.  Defendant filed his supplement on November 6, 2023.  ECF 59.  Accordingly, I shall refer to ECF 54 and ECF 59 collectively as the "Motion."

Thereafter, I directed the government to respond to the Motion.  *See* ECF 60.  The government's response is docketed at ECF 63.  No reply was filed.

A hearing is not necessary to resolve the Motion.  For the reasons that follow, I shall deny the Motion.

### I.        Factual Background

On December 7, 2021, Ferebee was charged in a one-count Indictment with the offense of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g). ECF 1.  Pursuant to a Plea Agreement (ECF 40), defendant entered a plea of guilty on September 8, 2022.  ECF 39.

The Plea Agreement included a Stipulation of Facts ("Stipulation").  ECF 40 at 10.  In the Stipulation, defendant agreed that, at a minimum, the government would have proven at a trial that on August 2, 2021, while defendant was driving a car in Baltimore, a Baltimore City police officer saw defendant fail to stop at a red traffic light.  *Id.*  The officer then stopped the vehicle; defendant was the sole occupant.  Thereafter, the officer learned that there were two outstanding warrants for the defendant, and he arrested the defendant.  An inventory search of the vehicle followed.  During the search, the police found a Taurus handgun under the driver's seat.  *Id.*  It had one round in the chamber and four rounds in an inserted magazine.  *Id.*

Under ¶ 6 of the Plea Agreement, the parties contemplated a final offense level of 21, after three deductions under § 3E1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  And, under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 60 months of imprisonment.  *Id. ¶* 9.

Defendant had a criminal history of V.  ECF 45 (Presentence Report), ¶ 40; ECF 53.  With an offense level of 21 and a criminal history category of V, defendant's Guidelines called for a sentence ranging from 70 to 87 months of incarceration.  *Id.*

Sentencing was held on January 5, 2023.  ECF 51.  The Court sentenced defendant to the agreed upon term of 60 months, with credit dating from August 2, 2021.  ECF 52.  No appeal was filed.  *See* ECF 40, ¶ 11 (Waiver of Appeal).

In the Motion, defendant contends that he was wrongfully convicted of the firearm offense. He points, *inter alia*, to the "standard" announced by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and "this Nation's historical tradition of firearm regulation."  ECF 54 at 2; *see also* ECF 59 at 4-5.  Of relevance, *Bruen* was decided in June 2022, *i.e.*, *before* defendant pled guilty.

In addition, in defendant's correspondence (ECF 54), he complains that his car was unlawfully searched. *Id.* at 1. But, he acknowledges that he "made a deal with the Prosecutor for 60 months[.]" *Id.* And, the "deal" was that he would "drop" his challenge to the search in exchange for a 60-month sentence. *Id.*

Defendant did not renew the complaint as to the search in the Supplement. *See* ECF 59. Instead, the Supplement focuses only on the Second Amendment contention.

## II. Legal Standard

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *see also United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In order to prevail on a § 2255 motion, a defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009).

Generally, the rule governing procedural default of claims brought under § 2255 precludes consideration of any contentions that "'could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains.'" *Pettiford*, 612 F.3d at 280 (quoting *Mikalajunas*, 186 F.3d at 492-93). Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also Reed*, 512 U.S. at 354 (stating that "the writ is available only if the petitioner establishes 'cause' for the

waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Murray*, 477 U.S. at 496; *Frady*, 456 U.S. at 167-68.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded their counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create a possibility of prejudice, but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Pursuant to the Supreme Court's ruling in *Carrier*, 477 U.S. at 494, prejudice does not support relief of a procedural default in the absence of a showing of cause. *See also Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). Indeed, it must be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Carrier*, 477 U.S. at 496.

In order to show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339

5

(1992)); *see also Bousley*, 523 U.S. at 623.  Notably, the petitioner must meet this burden by clear and convincing evidence.  *Mikalajunas*, 186 F.3d at 494.  In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

As the Fourth Circuit has said, "[a] valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'"  *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'"  *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)).  It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ."  *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

Notably, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted.  *Massaro*, 538 U.S. at 509; *see United States v. Faulls*, 821 F.3d 502, 507-08 (4th Cir. 2016).  Indeed, such claims ordinarily are not litigated on direct appeal.  Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance."  *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010).  Rather, such claims are usually litigated in a § 2255 action to allow for development of the record.  *Massaro*, 538 U.S. at 504-06; *United States v. Ladson*, 793 F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).

Moreover, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. LeMaster*, 403 F.3d 216, 220-23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim . . . ." *Mayhew*, 995 F.3d at 176-77. If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

In my view, no hearing is necessary here, because the Motion does not implicate matters of credibility.

### III.  The Guilty Plea

As noted, Petitioner entered a plea of guilty.  At that time, he was under oath to tell the truth.

A guilty plea is a "waiver of [a defendant's] right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.* Therefore, in order for a guilty plea to be valid, it must be voluntary. *Id.* And, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same). Thus, the plea of guilty must reflect an "intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). However, the Supreme Court clarified in *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983), that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Marshall*, 459 U.S. at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

Of import here, a defendant is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Indeed, "a defendant's solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74).

Conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Id.*; *see also Blackledge*, 431 U.S. at 74; *White*, 366 F.3d at 295-96; *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

The Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *Murillo*, 927 F.3d at 815; *cf. Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse, from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816. In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.*  Here, defendant does not "point to evidence" that undermines his knowing and voluntary decision to plead guilty based on a complete "understanding of the implications of pleading guilty . . . ." *Id.*

In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815.  Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence."  *Id.* at 815.  And, the "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22; ECF 45-1 at 38-39.

## IV. Discussion

### A.  The Second Amendment claim

In June 2022, the Supreme Court decided *Bruen*, 597 U.S. 1.  Then, almost three months later, on September 8, 2022, defendant entered a guilty plea to the charge of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g).  On the record before me, I cannot conclude that defendant's plea of guilty was unknowing or involuntary on the basis of *Bruen*.

Even assuming, *arguendo*, that defendant was unaware of *Bruen* when he entered his plea of guilty, his claim lacks merit.  This is because, in my view, the protection of the Second Amendment does not apply here, nor does it render the statute unconstitutional.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

Defendant was convicted under § 922(g)(1) of 18 U.S.C.  It provides, in part:

(g) It shall be unlawful for any person—
> (1) who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year;
> . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

In the seminal case of *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court determined that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  The "central" aspect of this right is the "right of self-defense." *Id.* at 628.  The Court noted, however, that, as with other fundamental rights, "the right secured by the Second Amendment is not unlimited."  *Id.* at 626.

The Court indicated that its decisions in this context apply to "law-abiding, responsible citizens," and said: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* According to the Court, such restrictions are "presumptively lawful regulatory measures," and the list is not exhaustive. *Id.* at 627 n.26.

In another landmark decision two years later, *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 778 (2010), the Supreme Court considered local ordinances that, among other things, barred the possession of certain firearms. The Court reiterated that the Second Amendment is a fundamental right, applicable to state and local governments pursuant to the Due Process Clause of the Fourteenth Amendment. But, the Court again made clear that the Second Amendment permits "reasonable firearms regulations." *Id.* at 785.

As noted, *Bruen*, 597 U.S. 1, was decided in June 2022. The *Bruen* Court analyzed the constitutionality of a New York firearm licensing scheme that dated to 1911, concerning the carrying of concealed firearms in a public places. Under that law, in order to obtain a permit to carry a concealed handgun in public, an applicant was required to demonstrate "proper cause," *i.e.*, "a special need for self-protection distinguishable from that of the general community." *Id.* at 12. The Court's majority concluded that because New York could not point to a robust tradition of regulations similar to the "proper cause" requirement, the statute violated the Second Amendment. *Id.* at 17.

In reaching that conclusion, the Court rejected the "'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny," around which the Courts of Appeals had previously "coalesced." *Id*. The Court said, *id.* (citation omitted).

> [W]e decline to adopt that two-part approach. In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulations, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[1]

This test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 597 U.S. at 26. To make this assessment, a court must engage in a two-pronged analysis.

First, a court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 17. If it does not, the analysis ends, and the government's regulation is valid. But, if the conduct at issue is covered by the Amendment's text, the conduct is presumed protected, and the government must then demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id*. Only if a firearm regulation is consistent with this Nation's historical traditional may a court conclude that the individual's conduct falls outside the protection of the Second Amendment. *Id*.

---

[1] Underscoring the significance of its pronouncement, the Supreme Court reiterated almost the identical statement a few pages later, *Bruen*, 597 U.S. at 24 (citation omitted):

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Notably, as in *Heller* and *McDonald*, the *Bruen* Court described the right under the Second Amendment as one belonging to law-abiding citizens. *See*, *e.g.*, *Bruen*, 597 U.S. at 8 (stating that *Heller* and *McDonald* "recognized that the Second an Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense"); *id.* at 26 (quoting *Heller's* statement that the Second Amendment protects "'the right of law-abiding, responsible citizens to use arms' for self-defense"); *id.* at 29 (stating that the historical inquiry should consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense"); *id.* at 71 (concluding that New York's licensing law violates the Second Amendment because "it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms").

Justice Kavanaugh's concurrence in *Bruen* reiterates what Justice Scalia said in *Heller*, 554 U.S. at 626, and what Justice Alito largely repeated in *McDonald*, 561 U.S. at 786: "'[N]othing in [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Bruen*, 597 U.S. at 87.

The case of *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012), is also instructive. *Moore* is a pre-*Bruen* decision, in which the defendant was charged with a violation of § 922(g)(1). *Id.* at 315. He appealed the trial court's denial of his motion to dismiss the indictment on Second Amendment grounds. *Id.* The Fourth Circuit concluded that § 922(g) is constitutional in light of *Heller*, 554 U.S. 570 (2008), both facially and as applied. *Id.* at 319, 320. Relevant here, the Court explained that "the *Heller* court ascribed the Second Amendment protection of 'the right of *law-abiding responsible* citizens to use arms in defense of hearth and home," rather than felons such as Moore. *Id.* at 319 (quoting *Heller*, 554 U.S. at 635) (emphasis in *Moore*).

Also in 2012, in *United States v. Carpio-Leon*, 701 F.3d 974, 975 (4th Cir. 2012), the Fourth Circuit said that "the scope of the Second Amendment does not extend to provide protection to illegal aliens, because illegal aliens are not law-abiding members of the political community." *Id.* at 975.  In other words, the protections apply only to law-abiding citizens.

Five years later, in *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017), the Fourth Circuit reiterated that the Second Amendment applies only to "law-abiding, responsible citizens."

Here, at the relevant time, Ferebee was a convicted felon, and thus prohibited under federal law from possession of a firearm.  Since *Bruen*, many courts have upheld the constitutionality of § 922(g)(1), either facially or as applied, with respect to felons.

To my knowledge, at least six federal circuits have addressed the issue, and five have found § 922(g)(1) to be constitutional.  *See United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024); *United States v. Miles*, 86 F.4th 734 (7th Cir. 2023); *Vincent v. Garland*, 80 F. 4th 1197 (10th Cir. 2023); *United States v. Jackson*, 69 F. 4th 495 (8th Cir. 2023); *United States v. Racliff*, 2023 WL 5972049 (5th Cir. Sept. 14, 2023).  Only the Third Circuit in *Range v. Atty. Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (en banc), has concluded otherwise.[2]

*Range* is an outlier, and its distinguishable.  It involved an individual convicted under Pennsylvania law of making false statements when seeking to obtain food stamps.  *Range*, 69 F.4th at 98.  The Third Circuit found that Range, "despite his false statement conviction, . . . remains

---

[2] The Fourth Circuit heard argument on December 5, 2023, in *United States v. Zavien Canada*, No. 22-4519, a case addressing the constitutionality of § 922(g)(1).  *Canada* involves an appeal stemming from a trial court's decision at his resentencing hearing.  Specifically, at Canada's resentencing hearing, the trial court denied his argument that § 922(g)(1) is unconstitutional in light of *Bruen*, which is the focus of his present appeal.  *See United States v. Zavien Canada*, 20-cr-451-HMH, ECF 181 at 7, 10.  To my knowledge, *Canada* is still pending.

among 'the people' protected by the Second Amendment." *Id.*  But, the court expressly indicated that its decision was "a narrow one." *Id.* at 106.  It reasoned, *id.*:

> Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a). Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms. Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

The case of *United States v. Coleman*, DJN-22-87, 2023 WL 6690935, at *19 (E.D. Va. Oct. 12, 2023), decided in October 2023, is informative.  There, the court included an appendix listing 172 "district court opinions [as of then] that have rejected a post-*Bruen* challenge to the constitutionality of Section 922(g)(1)."  *See, e.g.*, *United States v. Grinage*, JKP-21-399, 2022 WL 17420390, at *5 (W.D. Tex. Dec. 5, 2022) (explaining that *Heller* and *Bruen* "lead[] the Court to conclude convicted felons like Grinage are not included in 'the people' protected by the Second Amendment"); *United States v. Young*, 639 F. Supp. 3d 515, 524 (W.D. Pa. 2022) ("*Bruen*, *Heller* and *McDonald* dictate that Defendant's alleged conduct does not fall within the scope of the Second Amendment's protections due to his felony drug convictions."); *United States v. Grant*, MGL-22-161, 2022 WL 16541138, at *3 (D.S.C. Oct. 28, 2022) ("By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment.").

Since the time that *Coleman* was decided in October 2023, other courts have rejected similar challenges.  *See, e.g.*, *United States v. Berger*, 5:22-CR-00033, 2024 WL 449247 (E.D. Pa. Feb. 6, 2024); *United States v. Seals*, 3:23-CR-30098-DWD, 2024 WL 167675 (S.D. Ill. Jan. 16, 2024); *United States v. Hemingway*, 7:20-CR-180-D, 2024 WL 398553 (E.D.N.C. Jan. 2, 2024).

Within the Fourth Circuit, several cases provide guidance.  In *United States v. Ingram*, 623 F. Supp. 3d 660, (D.C.S. 2022), a judge in the District of South Carolina considered a challenge to 18 U.S.C. § 922(g) and § 924(c).[3]  As noted, § 922(g) makes it unlawful for a felon to possess a firearm, and § 924(c) makes it unlawful to use or carry a firearm in furtherance of a drug trafficking crime or a crime of violence.  *Id.* at 662.  The defendant argued that the conduct prohibited by those statutes is "protected by the plain text of the Second Amendment and historically unregulated."  *Id.*  Rejecting this argument, the district court determined that the distinction between law-abiding and non-law-abiding citizens in *Heller*, *McDonald*, and *Bruen* "clarifies the bounds of the plain text of the Second Amendment."  *Id.* at 664.  The court reasoned that because the statutes at issue "prohibit[] the use of firearms by non-law-abiding citizens for unlawful purposes," the conduct they prohibit is not protected by the Second Amendment.  *Id.*

Similarly, in *United States v. Nutter*, 624 F. Supp. 3d 636 (S.D. W. Va. 2022), a judge in the Southern District of West Virginia rejected a post-*Bruen* challenge to the constitutionality of 18 U.S.C. §§ 922(g)(9) and 924(a)(2).[4]  Sections 922(g)(9) and 924(a)(2) make it unlawful for a person previously convicted of a misdemeanor crime of domestic violence to possess or transport a firearm.  *Id.*  The court underscored the importance of "the Supreme Court's repeated invocation of 'law-abiding citizens' in its recent Second Amendment jurisprudence," and found support in the historical tradition for laws prohibiting certain categories of persons from possessing firearms in the interest of public safety.  *Id.* at 644–45.  Moreover, the court observed that these historical

---

[3] The case is currently on appeal to the Fourth Circuit.  *See United States v. Ingram*, Appeal No. 23-448.

[4] Section 924(a)(2) was amended and no longer provides the penalty for § 922(g) convictions; the new penalty provision in 18 U.S.C. § 924(a)(8) sets forth a statutory maximum sentence of 15 years' imprisonment for a § 922(g) offense.  *See* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022).

categories were not limited to felons, but extended more broadly to "groups identified as dangerous," "classes of individuals reasonably regarded as posing an elevated risk for firearms violence," and "any person viewed as potentially dangerous." *Id*. at 644 (citations omitted).[5]

Also of relevance, several judges in this District have upheld the constitutionality of § 922(g). *See Collins v. Garland*, ADC-23-042, 2023 WL 6962723 (D. Md. Oct. 20, 2023); *Alexander v. United States*, RDB-19-020, 2023 WL 6845424 (D. Md. Oct. 17, 2023); *Cusick v. U.S. Dep't of Just.*, TDC-22-1611, 2023 WL 5353170 (D. Md. Aug. 18, 2023); and *United States v. Costianes*, JKB-21-0458, 2023 WL 3550972 (D. Md. May 18, 2023).

In *Costianes*, 2023 WL 3550972, for example, the defendant was charged under § 922(g)(3) with possession of a firearm and ammunition by an unlawful user of controlled substances. *Id.* at *1. The defendant moved to dismiss, arguing that § 922(g)(3) is unconstitutionally vague and unconstitutional in light of *Bruen*. *Id.* In upholding the constitutionality of § 922(g)(3), Chief Judge Bredar stated, *id.* at *4: "This Court agrees with those courts that have concluded that the Second Amendment only covers 'law abiding' citizens." And, he stated, *id.*: "[T]he Court agrees with those courts that have concluded that conduct prohibited by § 922(g)(3) is not covered by the plain text of the Second Amendment because it only limits firearm possession for individuals engaged in unlawful conduct."

*Cusick*, a civil case, involved a convicted felon who sought to purchase a firearm, but was barred from doing so based on the provisions of § 922(g)(1). *Cusick*, 2023 WL 5353170, at *1. In finding § 922(g)(1) constitutional, Judge Chuang explained that "*Bruen* did not alter *Heller*"

---

[5] *Nutter* is on appeal to the Fourth Circuit, No. 22-4541 (4th Cir. Sept. 22, 2022). But, argument was placed in abeyance on November 2, 2023.

regarding "*Heller*'s determination that restrictions on felons possessing firearms are presumptively lawful." *Id.* at *5. Judge Chuang stated, *id.*:

> Where *Bruen* did not alter *Heller* on this point, the Court finds that it also remains bound by existing Fourth Circuit precedent holding that the Second Amendment right is limited to law-abiding citizens, precedent which has not been overruled by *Bruen*. *See United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (holding that the core right protected by the Second Amendment is "the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense"); *United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012) (finding that the Second Amendment right established in *Heller* is limited to "law-abiding citizens"). Notably, "the conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment." *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017).

According to Judge Chuang, "the conduct covered by 18 U.S.C. § 922(g)(1) is outside the scope of rights covered by the Second Amendment under *Heller*, *McDonald*, and *Bruen* . . . ." *Id.* Accordingly, he determined that "the Court need not engage in the analysis of analogues to 18 U.S.C. § 922(g)(1) in the historical tradition of the United States, as outlined in *Bruen*." *Id.*

*Alexander*, 2023 WL 6845424, and *Collins*, 2023 WL 6962723, reached similar results. In *Alexander*, the defendant was found guilty at trial of charges including drug possession and possession of a firearm by a prohibited person. In defendant's post-conviction motion under 28 U.S.C. § 2255, he argued, *inter alia*, that § 922(g)(1) is unconstitutional in light of *Bruen*. Judge Bennett disagreed and stated: "This Court does not agree that *Bruen*—which applied to law-abiding citizens in possession of a weapon—called into question the constitutionality of § 922(g)(1)." *Alexander*, 2023 WL 6845424, at *12. Judge Bennett determined that, "[g]iven Alexander's underlying felony conviction, it is clear that he is not an ordinary, law-abiding citizen and is not part of 'the people' whom the Second Amendment protects. As such, he is not entitled to possess a firearm, and § 922(g) is not unconstitutional as applied to him." *Id.*

In *Collins*, 2023 WL 6962723, a civil case, the plaintiff had been convicted of a felony and was subsequently denied a Maryland handgun license, Magistrate Judge Copperthite explained, *id.* at 3: "I agree with the courts that have concluded that the Second Amendment only extends its protections to law-abiding citizens." And, he concluded that "the plain text of the Second Amendment does not cover Plaintiff's potential conduct, and that he has failed to sufficiently allege that he falls within the category of law-abiding citizens entitled to Second Amendment protections." *Id.* at 4.

Finally, I note that I addressed a related issue in *United States v. Jackson*, 661 F. Supp. 3d 392 (D. Md. 2023), which is on appeal to the Fourth Circuit. *See* Appeal No. 24-4114. In *Jackson*, the defendant was charged with a violation of 18 U.S.C. § 922(n), which makes it unlawful for an individual under indictment for an offense punishable by imprisonment for a term of one year or more to transport or receive any firearm or ammunition that has travelled in interstate commerce.

The defendant argued that, in light of *Bruen*, 18 U.S.C. § 922(n) violates the Second Amendment, both facially and as applied. *Jackson*, 661 F. Supp. 3d at 397. Because Jackson had no previous criminal record and was merely indicted rather than convicted when he was found in possession of a firearm, I concluded "that Jackson is among 'the people' to whom the Second Amendment applies." *Id.* at 404. However, following analysis concerning the second prong in *Bruen*, I determined that § 922(n) is constitutional, as "the restriction on receiving or transporting firearms while under a felony indictment is consistent with the Nation's historical tradition of regulating firearms." *Id.* at 415.

In my view, the case law is compelling. The wealth of cases referenced above inescapably leads to the conclusion that 18 U.S.C. § 922(g)(1) does not violate the Second Amendment, either

facially or as applied.   Therefore, there is no basis for relief to defendant under the Second Amendment.

### B.   Fourth Amendment

Ferebee asserts a Fourth Amendment violation with respect to the search of his vehicle. Ferebee had the opportunity to litigate his Fourth Amendment claims prior to his plea agreement and, as the government puts it, he "made a calculated decision to enter into a plea . . . ."  ECF 63 at 7.  Even assuming that Ferebee's Fourth Amendment claims are cognizable, the Motion does not establish a basis for relief.

Defendant asserts, ECF 54 at 1: "My Girl friend at The Time lied to Police had a Warrant Taken out on me.  So on 8•2•21 I was Pulled over and Arrested for Those Charges.  During the Police stop I was informed of The Warrant Taken out Car That was Park [sic] and [was] arrested." He adds, *id.*: "The Car I was in was Park[ed] There was a driver with Valid license on the scene." And, he states, *id.* at 2:  "No other Reason or Probable Cause other Then [sic] Training was inventory Search done."  Moreover, he explains that he "did take The deal" because the prosecutor "was Talking 15 years" and he was "Scared," and thought he had "no other choice."  *Id.*

Ferebee contends that the search warrant relied on statements made to police that turned out to be untrue.  But, defendant does not argue that the police officer who obtained the search warrant had reason to believe those statements were false.  Nor does he argue that the officers executing the warrant were not operating on a good faith belief that the warrant they were executing was supported by probable cause.  *See United States v. Leon*, 468 U.S. 897 (1984).

In addition, defendant claims that the inventory search was unnecessary because a licensed driver was on the scene.  But, the presence of another driver does not defeat the need for or the right to conduct an inventory search.

Through counsel, in August of 2022, *i.e.* before the entry of the guilty plea, defendant filed a motion to suppress evidence.  ECF 36.  He complained that the vehicle search was unlawful. However, by virtue of his guilty plea and his Plea Agreement, Ferebee waived his claim concerning an alleged Fourth Amendment violation.  *See* ECF 40, ¶ 11.  Moreover, his claim is procedurally defaulted as it was not raised in a direct appeal.

## V.  Conclusion

Buyer's remorse does not entitle defendant to relief.  For the reasons stated above, I shall deny the Motion.

## VI. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post-conviction claim.

A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

As indicated, a COA may issue only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In my view, defendant has not made a substantial showing of the denial of his constitutional rights.

Nevertheless, I recognize that the Fourth Circuit has not yet resolved the question of the constitutionality of 18 U.S.C. § 922(g)(1) in light of *Bruen*, 597 U.S. 1 (2022).  And, because the issue is pending in the Fourth Circuit, I shall grant a COA to defendant, limited to the Second Amendment issue.

An Order follows, consistent with this Memorandum Opinion.

Date:   April 1, 2024                                  _____/s/_____

                                                                   Ellen L. Hollander
                                                                   United States District Judge